J-S19042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| STEVEN BLEAU, | : | |
| | : | |
| Appellant | : | No. 2337 EDA 2015 |

Appeal from the PCRA Order June 25, 2015
in the Court of Common Pleas of Chester County,
Criminal Division, No(s): CP-15-CR-00000443-1988

BEFORE:  BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 23, 2016**

Steven Bleau ("Bleau"), *pro se*, appeals from the Order dismissing his

third Petition for relief filed pursuant to the Post Conviction Relief Act

("PCRA").  *See* 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

This Court previously set forth the underlying facts as follows:

On the morning of November 30, 1987, at approximately 10:00
a.m., the body of Mabel Toledo ["Toledo"] and that of a dying
George Montgomery ["Montgomery"] were discovered by Arthur
(Moe) Jackson ["Jackson"] in his home at 165 Glencrest Road,
Valley Township, Chester County.  Both victims had been shot;
[] Toledo, four times and [] Montgomery, once.  Montgomery
later died at Brandywine Hospital.

                                    * * *

The events which led to this bloody murder scene began
November 29, 1987, when [] Bleau drove Gregory Ferguson
["Ferguson"], [] Toledo and [] Montgomery from New York City,
New York, to Chester County to meet [] Jackson.  Apparently,
Montgomery had asked Ferguson for the ride, but he did not
have a car.  Bleau, Ferguson's cousin, had a Buick Somerset and
agreed to drive.  Bleau and Ferguson were paid $250.00 for
driving Montgomery and Toledo to Chester County.  They arrived

in Coatesville at approximately 8:00 p.m. at Trina Rooks'[s] ["Rooks"] apartment on 102 Victoria Drive, Coatesville. [] Jackson, [] Rooks'[s] boyfriend, was alone at the apartment. [] Rooks arrived later.

At some point thereafter, Bleau, Ferguson, Montgomery, Toledo, [] Jackson and Rooks drove around Chester County and made several stops, eventually returning to 103 Glen Crest Avenue. [] Jackson and [] Rooks then left to go to Rooks'[s] mother's house for a sump pump to remove rain water from Jackson's basement. They returned, installed the sump pump and left at approximately 11:30 to 12 midnight. [] Toledo stated that she wanted to get up at 5:00 a.m. to return to New York City by 8:00 a.m. Later, at 1:30 a.m. (November 30) Montgomery telephoned his employer, Michael Strobert, in New York City and said he would not be at work on November 30, 1987.

According to [] Ferguson's testimony, [] Toledo and [] Montgomery took [a rifle with them] back to the bedroom, leaving [another rifle] with Ferguson and Bleau in the living room. Bleau and Ferguson sat around drinking beer and smoking cigarettes laced with cocaine. After a while, Bleau insisted that he wanted to get his money from Montgomery now; he was concerned he would not get paid. Bleau also talked of robbing Montgomery and Toledo. Together, Bleau and Ferguson went to the bedroom and Ferguson knocked on the door. Montgomery came to the door and Ferguson explained that Bleau thought he was "getting beat" and asked if they were going to be paid. Montgomery assured them they would be paid and turned back to walk into the bedroom. At that point, Bleau shot Montgomery who fell forward into Ferguson. Ferguson let him down to the ground.

Ferguson ran into the bedroom and Toledo picked up the telephone answering machine in one hand and the [rifle] in the other. When Ferguson grabbed the point of the gun, Toledo struck him in the head with the answering machine. Ferguson pushed her away and Bleau ran up and shot Toledo in the cheek while she was laying across the bed. During Ferguson's struggle with Toledo, they got tangled up in the telephone cord. After Bleau shot her in the cheek, Toledo pleaded for her life. Bleau picked up [Toledo's rifle] and shot [] Toledo in the head. Ferguson ran out [of] the door[,] leaving the telephone cord trailing behind him. Bleau followed him out carrying one of the

rifles, Montgomery's coat and Toledo's pocketbook. Bleau threw the rifle in the trunk, jumped in the driver's seat and began driving.

***Commonwealth v. Bleau***, 91 A.3d 1288 (Pa. Super. 2013) (unpublished memorandum at 2-3) (citation omitted).

On December 9, 1988, following a jury trial, Bleau was convicted of two counts of first-degree murder, two counts of criminal conspiracy, and one count of robbery.[1] Bleau was subsequently sentenced to an aggregate sentence of life in prison. This Court affirmed the judgment of sentence. ***See Commonwealth v. Bleau***, 631 A.2d 210 (Pa. Super. 1993) (unpublished memorandum).

Bleau's first PCRA Petition was denied, and this Court affirmed the denial. ***See Commonwealth v. Bleau***, 785 A.2d 1024 (Pa. Super. 2001) (unpublished memorandum), *appeal denied*, 798 A.2d 1286 (Pa. 2002). Bleau's second PCRA Petition was dismissed, and this Court affirmed the dismissal. ***See Bleau***, 91 A.3d 1288.

On March 23, 2015, Bleau filed the instant PCRA Petition, his third. The PCRA court issued a Pennsylvania Rule of Criminal Procedure 907 Notice. Bleau filed a Reply to the Rule 907 Notice. Thereafter, the PCRA court dismissed Bleau's PCRA Petition. Bleau filed a timely Notice of Appeal

---

[1] Ferguson pled guilty, on September 2, 1988, to the first-degree murder of Toledo and second-degree murder of Montgomery, as an accomplice of Bleau. Pursuant to a plea agreement, Ferguson was required to provide testimony at Bleau's trial. Ferguson was sentenced to concurrent terms of life in prison.

and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Bleau raises the following questions for our review:

1. Did [Bleau] exercise reasonable diligence in obtaining newly discovered recantation evidence from the Commonwealth'[s] sole witness (Ferguson), and timely present it with a strong *prima facie* showing of miscarriage of justice [and] innocence under the [**Commonwealth v.**] **Lawson**[, 549 A.2d 107 (Pa. 1988)] standard sufficiently to override the waiver and final litigation requirements of 42 Pa.C.S.[A.] §§ 9541-9551?

2. Did the PCRA court abuse [its] discretion by not considering … the admissibility of … Ferguson['s] declaration to [James] Ceasar and Ferguson's unsworn declaration under the excited utterance, state of mind and declaration against penal interest exceptions to the hearsay rule?

3. Does newly discovered recantation evidence from the Commonwealth's sole witness (Ferguson) establish [Bleau's] innocence; a violation of his Fourteenth Amendment right to due process [and] Eighth Amendment right against cruel and unusual punishment under the U.S. Constitution; and Article I, Section 9 [and] Article I, Section 13 under the Pennsylvania Constitution?

Brief for Appellant at 2 (some capitalization omitted).[2]

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

**Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

_____

[2] As all of Bleau's claims are related, we will address them together.

- 4 -

Initially, under the PCRA, any PCRA petition "*including a second or subsequent petition*, shall be filed within one year of the date the judgment becomes final[.]" 42 Pa.C.S.A. § 9545(b)(1) (emphasis added). A judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." *Id.* § 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

Here, Bleau's judgment of sentence became final in 1993. Thus, Bleau's third PCRA Petition is facially untimely under the PCRA. *See* 42 Pa.C.S.A. § 9545(b).

However, Pennsylvania courts may consider an untimely petition if the appellant can explicitly plead and prove one of the three exceptions set forth at 42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any PCRA petition invoking one of these exceptions "shall be filed within 60 days of the date the claim could have been presented." *Id.* § 9545(b)(2); *Albrecht*, 994 A.2d at 1094.

Bleau contends that he has met the requirements of the "newly discovered facts" exception. *See* 42 Pa.C.S.A. § 9545(b)(1)(ii).

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he

- 5 -

could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

***Commonwealth v. Brown***, 111 A.3d 171, 176 (Pa. Super. 2015) (citations and quotation marks omitted).

In order to prevail on a motion for new trial based upon newly-discovered evidence, Bleau must demonstrate that the evidence "(1) could not have been obtained prior to trial by exercising reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." ***Commonwealth v. Pagan***, 950 A.2d 270, 292 (Pa. 2008).

Bleau argues that he discovered new evidence in the form of a January 22, 2015 affidavit from Ferguson, and a February 8, 2015 affidavit from Ceasar, a prison inmate serving with Ferguson, each of which includes statements by Ferguson indicating that Bleau did not commit the murders.[3] Brief for Appellant at 11, 17, 25, 32. Bleau relies on Ferguson's statement that he and Bleau were not responsible for the murders, but that Jamaicans had committed the murders. ***Id***. at 11, 27, 32. Bleau also contends that he could not have ascertained this evidence until Ferguson was willing to reveal the truth, and that he filed the PCRA Petition within sixty days of when the evidence was discovered. ***Id***. at 11-12, 15, 32; ***see also id***. at 14 (wherein

---

[3] Ferguson died on February 8, 2015.

Bleau asserts that he and Ferguson were separated during their incarceration until 2012, when they were placed in the same prison). Bleau claims that he would not have been found guilty of the murder if not for Ferguson's false testimony, and that the recantation statements were not cumulative or corroborative of other evidence. *Id*. at 18, 19, 25, 32, 34-36; *see also id*. at 33, 38 (wherein Bleau argues that his due process claims were violated where the Commonwealth knowingly used false testimony to convict him). Bleau additionally argues that this claim was not previously litigated in his first PCRA Petition, as the prior claim involved Ferguson's lies during his plea colloquy and did not involve a recantation or a declaration as to the guilty parties. *Id*. at 13, 18-19. Bleau asserts that based on the affidavits, the PCRA court should have held an evidentiary hearing. *Id*. at 12, 17, 32.

In its Rule 907 Notice, the PCRA court addressed Bleau's claims as follows:

> The first affidavit submitted by [Bleau] [wa]s allegedly signed by [] Ferguson on January 22, 2015. However, there is no tangible evidence in the record that [Ferguson] actually signed this affidavit. …
>
> Notwithstanding the [PCRA c]ourt's authenticity concerns of the document, [Bleau's] reliance on [] Ferguson's affidavit is misplaced for other reasons. This affidavit is irrelevant[,] as it expands on [] Ferguson's prior recantation. Specifically, this issue was [partially] explored during [Bleau's] first PCRA proceedings. [] Ferguson's alleged affidavit is partially corroborative or cumulative of his prior recantation. … [A]fter conducting three evidentiary hearings on April 6, 1999, June 22, 1999, and November 23, 1999, [Bleau's] first PCRA Petition was

- 7 -

denied on June 19, 2000. The denial of [Bleau's] first PCRA Petition was affirmed by the Superior Court on [August 14, 2001].

[Aside from] the cumulative portion of the affidavit, [Bleau] fails to provide any credible evidence as to why he was unable to obtain the remaining information earlier through due diligence. [Bleau] merely asserts that he had exercised due diligence for the past 27 years concerning the case. [Bleau] suggests that he exercised due diligence by merely subpoenaing [] Ferguson as a witness in his first evidentiary hearing. Although [] Ferguson took the witness stand at [Bleau's] first evidentiary hearing, [Bleau] made a conscious choice not to ask him any questions concerning the actual facts of the case. Clearly, we will not construe [Bleau's] acquiescence as due diligence. Because the information contained in [] Ferguson's alleged affidavit constitutes facts that were, in part, already discovered by [Bleau,] and other facts that could have been discovered through the exercise of due diligence prior to the filing of his March 23, 2015 PCRA Petition[,] it is disingenuous for [Bleau] to now assert that he acted with due diligence. …

… [T]he record reflects that [Bleau] and [] Ferguson have been cooperating at least since [Bleau] filed his first PCRA Petition. … [A]t the first evidentiary hearing, [] Ferguson claimed that he lied at trial concerning his plea agreement with the Commonwealth. …

The alleged new affidavit from [] Ferguson not only reiterates his original recantation concerning his plea agreement[,] but also includes an additional recantation concerning the involvement of both [Bleau] and himself. Specifically, the new affidavit states that Jamaicans committed the murders and that both [Bleau] and [] Ferguson were not involved with the murders. Logic dictates that because [] Ferguson's alleged affidavit is directly inconsistent and contradictory to his trial testimony, both statements cannot be true. To say that the second statement contained in the alleged new affidavit is more reliable and credible tha[n] his trial testimony would be pure speculation, especially when the first one was unequivocally given under oath.

Rule 907 Notice, 5/15/15, at 5 (citations omitted); *see also* PCRA Court Opinion, 10/7/15, at 10 (finding that "Ferguson's incredible recantation testimony lacks reliability as Ferguson's original trial testimony was corroborated in several respects."). Upon our review of the record, we agree with the PCRA court's reasoning and determine that Bleau did not properly invoke the timeliness exception at section 9545(b)(1)(ii). *See* Rule 907 Notice, 5/15/15, at 5; *see also Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa. 2004) (noting that while the PCRA court must assess the credibility of the recantation in light of the evidence as a whole, recantation evidence is "notoriously unreliable," particularly where the witness argues that he committed perjury).

Additionally, for similar reasons as stated above, Ceasar's affidavit does not properly invoke the exception at section 9545(b)(1)(ii). In point of fact, Ferguson's statement to Ceasar, *i.e.*, that Bleau did not kill anyone, merely corroborates Ferguson's affidavit. Bleau cannot avoid the due diligence requirement by merely providing an affidavit from a person

(Ceasar) different than the person (Ferguson) recanting their testimony.[4]

Based upon the foregoing, the PCRA court did not err in dismissing Bleau's third PCRA Petition, without holding a hearing, where Bleau's claims were frivolous.[5] *See Commonwealth v. Hart*, 911 A.2d 939, 941 (Pa. Super. 2006) (stating that "a PCRA court may decline to hold a hearing on the petition if the PCRA court determines that the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence."); *see also Commonwealth v. Garcia*, 23 A.3d

---

[4] We note that Bleau cites to *Lawson* for the proposition that he is entitled to relief on his claims due to a miscarriage of justice. *See Lawson*, 549 A.2d at 112 (stating that "[a] repetitive or serial petition may be entertained only for the purpose of avoiding a demonstrated miscarriage of justice[.]"). However, "courts of Pennsylvania will only entertain a 'miscarriage of justice' claim when the initial timeliness requirement is met." *Commonwealth v. Burton*, 936 A.2d 521, 527 (Pa. Super. 2007). Further, "there is no 'miscarriage of justice' standard exception to the time requirements of the PCRA." *Id*. (citation omitted); *see also Commonwealth v. Brown*, 943 A.2d 264, 267 (Pa. 2008) (stating that "it is now well settled that there is no generalized equitable exception to the jurisdictional one-year time bar pertaining to post-conviction petitions."). Because Bleau did not properly invoke any exceptions to the timeliness requirements, he is not entitled to relief under *Lawson*.

[5] Bleau also contends that the declarations are admissible under the excited utterance, state of mind, and declaration against penal interest exceptions to the hearsay rule. Brief for Appellant at 20, 21-24, 26-31. However, Bleau's failure to include these claims in his PCRA Petition results in waiver. *See Commonwealth v. Washington*, 927 A.2d 586, 601 (Pa. 2007) (noting that "[a]ny claim not raised in the PCRA petition is waived and not cognizable on appeal."); *see also* Pa.R.Crim.P. 902(B) (stating that "[e]ach ground relied upon in support of the relief requested shall be stated in the [PCRA] petition. Failure to state such a ground in the petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief."). In any event, because Bleau did not properly invoke the exception at section 9545(b)(1)(ii), his claims in this regard would be moot.

1059, 1066 n.9 (Pa. Super. 2011) (concluding that where the petitioner filed an untimely PCRA Petition and did not plead and prove an exception to the timeliness requirement, the PCRA court did not abuse its discretion in declining to hold an evidentiary hearing).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2016